Bijan Amini
STORCH AMINI & MUNVES PC
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100

*Attorneys for Plaintiff Jay Glenn*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAY GLENN,<br><br>      Plaintiff,<br><br>  - against -<br><br>THOMAS FORTUNE FAY,<br>FAY LAW GROUP, P.A.,<br>STEVEN R. PERLES, and<br>PERLES LAW FIRM, P.C.,<br><br>      Defendants. | Case No. 16-cv-1452 (RCL)<br><br>**Re: ECF No. 8**<br><br>**ORAL ARGUMENT REQUESTED** |

### MEMORANDUM OF POINTS AND AUTHORITIES IN
### OPPOSITION TO FAY DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I.   STANDARD OF REVIEW .................................................................................................. 2

II.  THIS ACTION IS NOT TIME-BARRED ........................................................................ 2

   A.   Anticipatory Repudiation is Inapplicable Because Glenn Completed his
        Responsibilities in 2007 ................................................................................................ 2

   B.   Even if Fay Anticipatorily Repudiated in 2010, the Limitations Period Does Not
        Begin to Run until a Distribution from the QSF Trust Has Been Made and
        Defendants Refuse to Pay Glenn ................................................................................ 5

III. ALTERNATIVELY, THE LIMITATIONS PERIOD SHOULD BE EQUITABLY
     TOLLED BECAUSE FAY PREVIOUSLY ARGUED GLENN LACKED STANDING
     TO ASSERT HIS CLAIMS AND INTERVENE .............................................................. 7

IV.  GLENN HAS A VALID DECLARATORY JUDGMENT CLAIM ................................ 8

CONCLUSION ............................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ARP Films, Inc. v. Marvel Entm't Group, Inc.*,
    952 F.2d 643 (2d Cir. 1991) ................................................................................................ 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................ 2

*Bailey v. Greenberg*,
    516 A.2d 934 (D.C. 1986) .................................................................................................. 8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................ 2

*Brown v. Hornstein*,
    669 A.2d 139 (D.C. 1996) .................................................................................................. 2

*Central Trust Co. of Ill. v. Chicago Auditorium Ass'n*,
    240 U.S. 581 (1916) ............................................................................................................ 5

*Cities Serv. Helex, Inc. v. United States*,
    543 F.2d 1306 (Ct. Cl. 1976) .............................................................................................. 6

*EastBanc, Inc. v. Georgetown Park Assocs. II, L.P.*,
    940 A.2d 996 (2008) ................................................................................................. 1, 6, 7

*Fed. Life Ins. Co. v. Rascoe*,
    12 F.2d 693 (6th Cir. 1926) ................................................................................................ 3

*Fresca v. FDIC*,
    818 F. Supp. 664 (S.D.N.Y. 1993) ..................................................................................... 5

*Hornblower v. George Washington Univ.*,
    31 App. D.C. 64 (1908) ...................................................................................................... 8

*Keefe Co. v. Americable Int'l, Inc.*,
    755 A.2d 469 (D.C. 2000) .................................................................................................. 2

*National R.R. Passenger Corp. v. Consolidated Rail Corp.*,
    670 F. Supp. 424 (D. D.C. 1987) ........................................................................................ 8

*Phelps v. Herro*,
    137 A.2d 159 (Md. 1957) ................................................................................................... 3

*Reprosystem, B.V. v. SCM Corp.*,
    630 F. Supp. 1099 (S.D.N.Y. 1986) ................................................................................... 3

*Roehm v. Horst*,
   178 U.S. 1 (1900) .................................................................................................. 5

*Silver Air v. Aeronautic Dev. Corp. Ltd.*,
   656 F. Supp. 170 (S.D.N.Y. 1987) ......................................................................... 5

*Smythe v. United States*,
   302 U.S. 329 (1937) .............................................................................................. 2

*U S Potash v. McNutt*,
   70 F.2d 126 (10th Cir. 1934) ................................................................................. 5

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 1, 2

**Other Authorities**

23 Williston on Contracts § 63:61 (4th ed.) ................................................................... 3

54 C.J.S. Limitations of Actions § 190 (June 2016) ..................................................... 5

Black's Law Dictionary 462 (6th ed. 1990) .................................................................. 5

Restatement (Second) of Contracts § 253 (1981) ......................................................... 3

Thomas H. Jackson, "Anticipatory Repudiation" and the Temporal Element of Contract Law:
   An Economic Inquiry into Contract Damages in Cases of Prospective Nonperformance,
   31 Stan. L. Rev. 69 (1978) .................................................................................... 4

Jay Glenn submits this memorandum of points and authorities in opposition to the motion of Defendants Thomas Fortune Fay and Fay Law Group, P.A. (together, "Fay") to dismiss pursuant to FED. R. CIV. P. 12(b)(6).

## PRELIMINARY STATEMENT

Fay argues the Complaint is time-barred because when he advised Glenn in 2010 that Glenn would not be paid under the Associate Counsel Agreement or Additional Fee Agreement (each as defined in the Complaint), Glenn "elected to treat the repudiation as a breach of contract [by] bringing an action on the claim" against the Defendants herein in the United States District Court for the Southern District of New York (the "New York Action"),[1] which in turn "trigger[ed] the running of the [three year] statute of limitations" for breach of contract claims, citing *EastBanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996 (2008). (Fay Memorandum pp.2-3.)

Fay is wrong as a matter of law. Fay's argument is based on the incorrect legal conclusion that Glenn could have elected to treat Fay's 2010 announcement that he had no intention of paying Glenn as an anticipatory breach. That conclusion is incorrect because the anticipatory breach doctrine does not apply to contracts that the complaining party (*i.e.*, Glenn) has fully performed.

Even if the doctrine applied, the motion should still be denied because Glenn did not elect to treat Fay's 2010 announcement as a breach, as the resulting New York Action did not seek contract damages and instead sought to affirm Glenn's eventual right to payment and charging lien and related relief, if and when amounts were collected on behalf of the *Peterson* plaintiffs. As a result, the commencement of the New York Action did not trigger the start of the statute of limitations on Glenn's claim in this action.

---

[1] That action was dismissed for lack of jurisdiction and improper venue. (Fay Memorandum p.3 n.3.)

Finally, and alternatively, the equitable tolling doctrine applies because Fay previously argued, in direct contradiction to the arguments asserted herein, that Glenn's claims of entitlement to payment were too remote or speculative. Accordingly, under Fay's own argument Glenn's cause of action had not yet accrued, thereby lulling Glenn into inaction until a distribution to the *Peterson* plaintiffs appeared imminent. Accordingly, even if a breach of contract claim technically accrued in 2010 the instant Complaint should not be dismissed as time-barred.

## **ARGUMENT**

### **I.   STANDARD OF REVIEW**

A court considering a motion to dismiss under Rule 12(b)(6) must presume the factual allegations in the complaint to be true and construe them liberally in plaintiff's favor, subject to the limitation that a court need not accept a plaintiff's legal conclusions as true or presume the veracity of legal conclusions couched as facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### **II.  THIS ACTION IS NOT TIME-BARRED**

#### **A.   Anticipatory Repudiation is Inapplicable Because Glenn Completed his Responsibilities in 2007**

Fay's conclusion that this action is time-barred is incorrect because the anticipatory breach doctrine does not apply to contracts which the complaining party has fully performed. *See Smythe v. United States*, 302 U.S. 329, 357 (1937) ("the rule of law is settled that the doctrine of anticipatory breach has in general no application to unilateral contracts, and particularly to such contracts for the payment of money only"); *Keefe Co. v. Americable Int'l, Inc.*, 755 A.2d 469, 473 (D.C. 2000) ("even where the obligor expressly informs the obligee that no further payments will be made … courts have declined to apply the doctrine of anticipatory repudiation"); *Brown v. Hornstein*, 669 A.2d 139, 143 (D.C. 1996) ("Tenant may not repudiate her agreement after having

enjoyed its fruits"); *Phelps v. Herro*, 137 A.2d 159, 164 (Md. 1957) ("with reference to unilateral contracts, or bilateral contracts that have become unilateral by full performance on one side … the text writers and decisions are in general accord that the doctrine of anticipatory breach has no application … We think the proper rule is that the doctrine of anticipatory breach of a contract has no application … where one party has fully performed his undertaking, and all that remains for the opposite party to do is to pay a … sum of money at a certain time or times"); *Reprosystem, B.V. v. SCM Corp.*, 630 F. Supp. 1099, 1101 (S.D.N.Y. 1986) ("the doctrine of anticipatory breach is only available as a defense to continued performance by the injured party and therefore is not appropriate if the party invoking the doctrine has fully performed"); Restatement (Second) of Contracts § 253, Comment C (1981) ("it is one of the established limits on the doctrine of 'anticipatory breach' that an obligor's repudiation alone … gives rise to no claim for damages at all if he has already received all of the agreed exchange for it.  The rule stated in Subsection (1) [*i.e.*, anticipatory breach by a party "before he has received all of the agreed exchange for it" gives rise to a total breach claim] does not, therefore, allow a claim for damages for total breach in such a case"); 23 Williston on Contracts § 63:61 (4th ed.) ("when a bilateral contract has become a unilateral obligation by full performance on one side, anticipatory repudiation of that obligation does not permit the immediate filing of an action").

      The rationale for this stems from the idea that the non-breaching party cannot be harmed by waiting for the time of breach.  In explaining the basis for the rule, Restatement (Second) of Contracts § 253, Comment C (1981) directs readers to *Fed. Life Ins. Co. v. Rascoe*, 12 F.2d 693, 697 (6th Cir. 1926) (Denison, J., dissenting), which explained:

> Where his part of the contract has been executed by the plaintiff, he has nothing to do but to wait, and to do so continues to be in his power.  His position will not be prejudicially changed by defendant's repudiation; and hence he will have no estoppel to rely upon to precipitate the defendant's obligation.

*See also* Thomas H. Jackson, "Anticipatory Repudiation" and the Temporal Element of Contract Law: An Economic Inquiry into Contract Damages in Cases of Prospective Nonperformance, 31 STAN. L. REV. 69, 118 n.172 (1978) ("repudiation before the time fixed for performance can never operate as an anticipatory repudiation entitling the aggrieved party to sue, if the contract was unilateral at the time of the repudiation … [The] premise underlying such a holding is the belief that as one of things contracted for was payment on particular dates, with whatever risks were attendant on those dates (*e.g.*, insolvency, disappearance of the debtor), early payment would result in an undeserved windfall").

The Complaint plainly states that by 2007 Glenn had fully performed his obligations under the Associate Counsel and Additional Fee Agreements. (Complaint ¶¶22, 28.) The Complaint also identifies the payment of funds collected by Defendants on behalf of the *Peterson* plaintiffs Glenn represented as the sole outstanding obligation of Fay & Perles under their agreements with Glenn, and states no such funds have been collected to date. (*Id*. at ¶¶2, 13, 16, 18, 22, 28-29.) Accordingly, the anticipatory breach doctrine is inapplicable, and the statute of limitations on a breach of contract claim does not begin to run until Defendants actually receive payment from the QSF Trust (as defined in the Complaint) and decline to pay Glenn.

Fay cites *EastBanc* for the proposition that Glenn elected to treat Fay's 2010 announcement that he had no intention of paying Glenn as a breach of contract by commencing legal action in New York, which in turn triggered the start of the limitations period. (Fay Memorandum pp.2-3.) However, Glenn could not have elected to treat such refusal as an anticipatory breach because the doctrine is unavailable. Indeed, *EastBanc* cites the Court of Appeals' *Keefe* decision approvingly, which as noted above held the anticipatory breach doctrine does not apply to contracts the complaining party fully performed. 940 A.2d at 1007-08.

### B. Even if Fay Anticipatorily Repudiated in 2010, the Limitations Period Does Not Begin to Run until a Distribution from the QSF Trust Has Been Made and Defendants Refuse to Pay Glenn

Fay's contention that the date on which a breach of contract claim accrued was accelerated by Glenn's decision to bring suit against the Defendants herein in New York in 2010 is incorrect. (Fay Memorandum pp.2-3.)

Under basic contract law principles, in order for repudiation to accelerate the accrual date for a breach of contract claim, the party to whom the repudiation is made must treat the contract as ended. *U S Potash v. McNutt*, 70 F.2d 126, 130 (10th Cir. 1934) (quoting *Roehm v. Horst*, 178 U.S. 1 (1900)) ("Before one may rely upon a repudiation … he must accept it as such and treat the contract as an end. If he fails to do that, 'he keeps the contract alive for the benefit of the other party as well as his own'"); *Silver Air v. Aeronautic Dev. Corp. Ltd.*, 656 F. Supp. 170, 178 (S.D.N.Y. 1987) ("a contract that is not treated as broken continues exist for the benefit of both parties"); 54 C.J.S. Limitations of Actions § 190 (June 2016) ("if the injured party elects to place the repudiator in breach before the performance date, the accrual date is accelerated from the time of performance to the date of such election. However, in order for this rule to apply … the party to whom the renunciation is made must accept it as a breach and treat the contract as ended").

A party elects to treat a contract as ended if it brings suit for damages. *See Central Trust Co. of Ill. v. Chicago Auditorium Ass'n*, 240 U.S. 581, 589 (1916) ("where a party … repudiates his obligations … the promisee has the option to treat the contract as ended, so far as further performance is concerned, and maintain an action at once <u>for the damages occasioned by such anticipatory breach</u>"); *Fresca v. FDIC*, 818 F. Supp. 664, 668 (S.D.N.Y. 1993) (citing Black's Law Dictionary 462 (6th ed. 1990)) (definition of "repudiation" provides that contract repudiation does not operate as an anticipatory breach unless the non-repudiating party "elects to treat the repudiation as a breach, and brings suit <u>for damages</u>").

In contrast, actions taken by the non-repudiating party to seek or demand performance by the other party after the purported repudiation are "tantamount to an election to affirm the contract" rather than treat the contract as ended. *ARP Films, Inc. v. Marvel Entm't Group, Inc.*, 952 F.2d 643, 649 (2d Cir. 1991) (citing *Cities Serv. Helex, Inc. v. United States*, 543 F.2d 1306, 1313-14 (Ct. Cl. 1976)).

The complaint Glenn filed in the New York Action did not seek to treat the Associate Counsel or Additional Fee Agreements as ended by seeking damages, but instead sought declaratory judgments seeking to affirm Glenn's eventual right to payment and charging lien and related relief, if and when amounts were collected on behalf of the *Peterson* plaintiffs. Specifically:

(1) Count 1 sought a declaratory judgment that Glenn has a valid charging lien on amounts collected by Defendants herein in the so-called turnover action pending in New York, in an amount equal to 3% of amounts collected on behalf of the 103 *Peterson* plaintiffs listed on Glenn's Notice of Lien (as defined in the Complaint) plus 11.1% of amounts collected on those plaintiffs listed on Exhibit 2 thereof;

(2) Count 2 sought a declaratory judgment that Glenn referred the 40 plaintiffs listed on Exhibit 2 of his Notice of Lien; and

(3) Count 3 sought an order directing that Glenn be given access to sealed files in the New York turnover action, so that Glenn could take steps to protect the value of his charging lien.

(Fay Memorandum Exhibit 2 ¶¶236-252, Prayer for Relief.)

Accordingly, the filing of the New York Action did not accelerate the accrual of any breach of contract claim, and thus, the accrual date remains the date(s) Defendants breach such agreements by failing to pay Glenn following Defendants' receipt of a distribution from the QSF Trust.

*EastBanc* supports Glenn's position. At issue in *EastBanc* was whether the parties' entry into an agreement in 2001 triggered the running of the statute of limitations for breach of a 1998 letter agreement concerning EastBanc's contemplated acquisition of the Georgetown Park Mall.

940 A.2d 996, 999-01.  The Superior Court held EastBanc's entry into the 2001 agreement constituted an election treat the other party as in breach, which in turn triggered the running of the statute of limitations.  *Id*. at 1001, 1006-07.  The Court of Appeals reversed on the grounds that entry into the 2001 agreement did not constitute "an election to treat the repudiation as a breach" because the 2001 agreement was entered into in furtherance of and to facilitate the contemplated Georgetown Park Mall transaction.  *Id*. at 1008.  The same logic supports not treating the New York Action as an election to treat Fay's announcement that he had no intention of paying Glenn as a breach of the Associate Counsel and Additional Fee Agreements.

At a minimum, the question of whether Glenn elected to treat the Associate Counsel and Additional Fee Agreements as ended or sought to affirm the agreements is a fact question which cannot be decided on a motion to dismiss.  Significantly, *EastBanc*, the sole decision relied on by Fay, was decided on a motion for summary judgment, not a motion to dismiss, and therefore is irrelevant to that question.

### III. ALTERNATIVELY, THE LIMITATIONS PERIOD SHOULD BE EQUITABLY TOLLED BECAUSE FAY PREVIOUSLY ARGUED GLENN LACKED STANDING TO ASSERT HIS CLAIMS AND INTERVENE

Alternatively, the Complaint should not be dismissed as time-barred, and the statute of limitations should be tolled on equitable grounds, because Fay previously argued Glenn did not have standing to pursue the claims he asserted in the New York Action or intervene in the turnover action absent a prior distribution to the *Peterson* plaintiffs.[2]  It is well established that the statute

---

[2] Specifically, in arguing Glenn should not be allowed to intervene, Fay argued no "case or controversy" exists until "[t]he Plaintiffs … first win a turnover order of the restrained assets against the proper garnishee(s), and a court … determine[s] what … interest in the recovered assets Mr. Glenn has." (Opposition to Glenn's Motion for Leave to Intervene, a true and correct excerpt of which is attached as Exhibit 1.)  Likewise, in the motion to dismiss the New York Action, Fay argued Glenn's claims were unripe, both because (1) "the *Peterson* Plaintiffs have … not yet collected any funds to satisfy their outstanding judgment against Iran," thereby rendering that action a "premature effort … to obtain an advisory opinion on his future, contingent fees," and (2) Glenn "cannot demonstrate … any hardship if the Court defers determining the amount of Glenn's fees until after an actual recovery by the *Peterson*

of limitations for a breach of contract claim is equitably tolled where a defendant engaged in conduct "that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute to run." *Bailey v. Greenberg*, 516 A.2d 934, 937 (D.C. 1986) (quoting *Hornblower v. George Washington Univ.*, 31 App. D.C. 64, 75 (1908)). By arguing Glenn lacked standing to assert his claims and to intervene because to do so was premature, Fay did exactly that. Accordingly, the instant Complaint should not be dismissed as time-barred.

### IV. GLENN HAS A VALID DECLARATORY JUDGMENT CLAIM

Fay asserts that Glenn has no cause of action under the Declaratory Judgment Act as his cause of action is one for breach of contract. (Fay Memorandum p.1 ("Glenn's Cause of Action is for Breach of Contract.")) Glenn does not dispute that this action <u>sounds</u> in contract.[3] However, Fay's position that this <u>is</u> a breach of contract action is incorrect: "[t]he legislative history of the Declaratory Judgment Act indicates that one of Congress' purposes for creating the act was to enable parties in a dispute over contract rights to secure a declaration about such rights before any breach of the contract." *National R.R. Passenger Corp. v. Consolidated Rail Corp.*, 670 F. Supp. 424, 430 (D. D.C. 1987). Likewise, the purpose of this action is to determine Glenn's rights under the Associate Counsel and Additional Fee Agreements <u>before</u> Defendants breach their obligations to Glenn upon their receipt of a distribution from the QSF Trust on behalf of plaintiffs Glenn represented. Regardless, Glenn's claim is not time-barred.

---

Plaintiffs." (Memorandum of Law in Support of Motion to Dismiss the New York Action, a true and correct excerpt of which is attached as <u>Exhibit 2</u>.) Here, given that the QSF Trustee has now announced, in light of recent legal developments, that he intends to shortly begin disbursements to plaintiffs, including the *Peterson* plaintiffs, this controversy is now ripe for adjudication.

[3] The Civil Cover Sheet filed by Glenn describes this action as follows: "Declaratory Judgment (Contract)."

## **CONCLUSION**

The motion to dismiss should be denied.

Dated: August 3, 2016               STORCH AMINI & MUNVES PC

                                    By: /s/ Bijan Amini
                                        Bijan Amini
                                    140 East 45th Street, 25th Floor
                                    New York, New York 10017
                                    (212) 490-4100

                                    *Attorneys for Plaintiff Jay Glenn*

## **PROOF OF SERVICE**

      I hereby certify the foregoing Memorandum of Points and Authorities in Opposition to Fay Defendants' Motion to Dismiss was filed electronically via ECF on August 3, 2016 and served electronically at that time on all counsel of record, all of whom are registered to receive filings via ECF.

                                                    /s/ Bijan Amini