Bijan Amini
STORCH AMINI & MUNVES PC
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100

*Attorneys for Plaintiff Jay Glenn*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAY GLENN,<br><br>      Plaintiff,<br><br>  - against -<br><br>THOMAS FORTUNE FAY,<br>FAY LAW GROUP, P.A.,<br>STEVEN R. PERLES, and<br>PERLES LAW FIRM, P.C.,<br><br>      Defendants. | Case No. 16-cv-1452 (RCL)<br><br>**Re: ECF No. 13**<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PERLES DEFENDANTS' MOTION TO DISMISS**

## **TABLE OF CONTENTS**

                                                                                                                             **Page**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.      GLENN'S DECLARATORY JUDGMENT CLAIM IS VALID UNDER
         28 U.S.C. § 2201 ............................................................................................................... 2

II.     GLENN'S DECLARATORY JUDGMENT CLAIM IS NOT TIME-BARRED .............. 4

        A.      Perles Ignores Glenn's Arguments and Relies Upon Irrelevant Authority ............. 4

        B.      Fay's Arguments, Incorporated by Reference, are Incorrect ................................. 8

III.    GLENN'S CLAIM SATISFIES APPLICABLE PLAUSIBILITY REQUIREMENTS .. 10

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aetna Life Ins. Co. v. Haworth*,
  300 U.S. 227 (1937) .................................................................................................... 3

*Bank Markazi v. Peterson*,
  136 S. Ct. 1310 (2016) ....................................................................................... 7, 8, 11

*Bartlett v. Overslaugh*,
  No. 12-1306, 2016 WL 1060200 (D. D.C. Mar. 11, 2016) ......................................... 4

*Bridges v. Blue Cross and Blue Shield Ass'n*,
  935 F. Supp. 37 (D. D.C. 1996) .................................................................................. 4

*C&E Servs., Inc. v. D.C. Water and Sewer Auth.*,
  310 F.3d 197 (D.C. Cir. 2002) .................................................................................... 3

*EastBanc, Inc. v. Georgetown Park Assocs. II, L.P.*,
  940 A.2d 996 (D.C. 2008) .......................................................................................... 5

*Gauer v. Gallaudet Univ.*,
  915 F. Supp. 2d 145 (D. D.C. 2013) ........................................................................... 6

*Hardware Mut. Cas. Co. v. Schantz*,
  178 F.2d 779 (5th Cir. 1949) ...................................................................................... 3

*In re Islamic Republic of Iran Terrorism Litig.*,
  659 F. Supp. 2d 31 (D. D.C. 2009) ............................................................................. 7

*Keener Oil & Cas Co. v. Cons. Gas Util. Corp.*,
  190 F.2d 985 (10th Cir. 1951) .................................................................................... 3

*LoPiccolo v. Am. Univ.*,
  840 F. Supp. 2d 71 (D. D.C. 2012) ............................................................................. 6

*Medhin v. Hailu*,
  26 A.3d 307 (D.C. 2011) ............................................................................................ 6

*Mpras v. D.C.*,
  74 F. Supp. 3d 265 (D. D.C. 2014) ............................................................................. 3

*Nat'l R.R. Passenger Corp. v. Cons. Rail Corp.*,
  670 F. Supp. 424 (D. D.C. 1987) ................................................................................ 3

*Pardue v. Ctr. City Consortium of Archdiocese of Wash., Inc.*,
    875 A.2d 669 (D.C. 2005) .................................................................................................. 6

*Schilling v. Rogers*,
    363 U.S. 666 (1960) .......................................................................................................... 3

*Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*,
    650 F. Supp. 2d 1213 (S.D. Fla. 2009) ............................................................................. 3

*Skelly Oil Co. v. Phillips Petroleum Co.*,
    339 U.S. 667 (1950) .......................................................................................................... 3

**Statutes, Rules, and Other Authorities**

22 U.S.C. § 8772 ........................................................................................................................ 7

28 U.S.C. § 1605 ........................................................................................................................ 8

28 U.S.C. § 1606 ........................................................................................................................ 8

28 U.S.C. § 2201 ........................................................................................................................ 2

D.C. Code § 29-603.06 ............................................................................................................ 11

FED. R. CIV. P. 12 ....................................................................................................................... 1

Md. Code, Corps. and Assocs. § 9A-306 ................................................................................ 11

RESTATEMENT (SECOND) OF CONTRACTS § 253 (1981) ........................................................ 8, 9

Jay Glenn submits this memorandum of points and authorities in opposition to the motion of Defendants Steven R. Perles and Perles Law Firm, P.C. (together, "Perles") to dismiss pursuant to FED. R. CIV. P. 12(b)(6).

## PRELIMINARY STATEMENT

Perles' motion is premised on the incorrect legal assumption that a plaintiff can never assert a claim for a declaratory judgment concerning his rights under a contract prior to a breach. According to Perles, any declaratory judgment claim must be accompanied by a breach of contract claim. Also, if the declaratory judgment claim is accompanied by a breach of contract claim then the former must be dismissed as duplicative of the latter. That makes no sense. The Declaratory Judgment Act was specifically designed to enable parties to obtain a judgment concerning their respective contract rights before a breach has occurred and a cause of action has accrued. That is exactly what Glenn has done here. Glenn has pleaded he is due his fees once Defendants herein receive a distribution that includes their fees—this has not yet occurred (although it is imminent), and hence, there is no breach yet.

Perles also argues Glenn's declaratory judgment claim is time barred because he has a breach of contract claim that purportedly accrued when he brought an earlier declaratory judgment action in New York in 2010. In that suit, Perles argued that the claim was then too speculative, and Glenn's claim was subsequently dismissed without prejudice on grounds of lack of jurisdiction and improper venue. Significantly, Perles does not address any of the arguments raised by Glenn in response to Fay's similar argument, including case law showing that an action, such as Glenn's prior declaratory judgment action, seeking to affirm a contract, does not commence the running of the limitations period. Rather, Perles simply cites cases dismissing breach of contract claims where the limitations period commenced when the breaching party failed to perform at the time

1

required by the contract. Perles, pretending those cases are on point, analogizes them to the instant situation where Perles' time to perform has yet to arrive, although the time for performance, unlike at the time of the earlier declaratory judgment action, is now imminent. In addition, Fay's arguments raised on reply, which Perles incorporated by reference, likewise do not support dismissal of this action.

In a final, desperate attempt, Perles argues the Complaint does not satisfy plausibility requirements under *Twombly*. That is incorrect. The Complaint alleges precisely why Glenn is owed money by the partnership "Fay & Perles," if and when a distribution is made to Defendants from the QSF Trust for the benefit of the *Peterson* plaintiffs, pursuant to the Associate Counsel and Additional Fee Agreements (each as defined in the Complaint), and further states Perles is responsible for partnership debts.

## ARGUMENT

**I. GLENN'S DECLARATORY JUDGMENT CLAIM IS VALID UNDER 28 U.S.C. § 2201**

Perles argues Glenn's standalone declaratory judgment claim must be dismissed because it is unaccompanied by a valid breach of contract claim. (Perles Memo. pp.3-4.) That argument is incorrect.

The Declaratory Judgment Act's plain language permits the instant action. Under 28 U.S.C. § 2201, this Court may "declare the rights and other legal relations of any interested party" that presents "a case of actual controversy." This case presents an actual controversy since the issue presented (whether Glenn has a right to payment upon Defendants' receipt of a distribution) is a question regarding the parties' contractual and legal rights and obligations. Indeed, the Declaratory Judgment Act's legislative history expressly states the statute's purpose is to enable parties to a contract dispute "to secure a declaration about such rights <u>before</u> any breach of

contract." *Nat'l R.R. Passenger Corp. v. Cons. Rail Corp.*, 670 F. Supp. 424, 430 (D. D.C. 1987) (citing legislative history). *See also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950) ("The Declaratory Judgment Act allowed relief to be given by way of recognizing the plaintiff's right even though no immediate enforcement of it was asked"); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937) (same); *Hardware Mut. Cas. Co. v. Schantz,* 178 F.2d 779, 780 (5th Cir. 1949) ("The purpose of the Declaratory Judgment Act is to settle 'actual controversies' before they ripen into … breach of some contractual duty"); *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213 (S.D. Fla. 2009) (citing *Keener Oil & Cas Co. v. Cons. Gas Util. Corp.*, 190 F.2d 985, 989 (10th Cir. 1951)) (same).  That purpose would be impossible to achieve if plaintiffs seeking a declaratory judgment concerning contractual obligations prior to breach were required to assert a breach of contract claim.

Glenn also has a "judicially remediable right" as nothing prohibits this Court from interpreting the parties' contract rights, in contrast to the cases Perles cites. *See C&E Servs., Inc. v. D.C. Water and Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)) ("'availability of [declaratory] relief presupposes the existence of a judicially remediable right' … Thus, the Supreme Court held in *Schilling* that federal courts may not declare a plaintiff's rights under a federal statute that Congress intended to be enforced exclusively through a judicially <u>un</u>reviewable administrative hearing.  This case is nearly identical to *Schilling*"); *Mpras v. D.C.*, 74 F. Supp. 3d 265, 270, 273 (D. D.C. 2014) (holding plaintiff had no "judicially remediable right" to the alleged declaratory relief he sought (injunction directing issuance of photo ID under Law Enforcement Officer's Safety Act that would permit him to carry a concealed weapon) because he had no right to obtain the identification under the act).

3

In addition, it would make no sense to require Glenn to plead a breach of contract claim because no such claim presently exists. That is, Defendants' contractual obligations to Glenn are not triggered until their receipt of a distribution on behalf of the *Peterson* plaintiffs, which has not yet occurred, meaning a declaratory judgment action is the only mechanism to determine the parties' contractual rights and obligations. Further, pleading a breach of contract <u>and</u> declaratory judgment claim may result in dismissal of the latter, which is the only relief Glenn is presently seeking. *Bartlett v. Overslaugh*, No. 12-1306, 2016 WL 1060200, at *8 (D. D.C. Mar. 11, 2016). Thus, requiring Glenn to plead a breach of contract claim at this juncture, as argued by Perles, would deprive Glenn of the statutory protections afforded him by the Declaratory Judgment Act.

Finally, the case law Perles cites for the proposition there is no such thing as a viable standalone declaratory judgment claim seeking a determination of contract rights and obligations upon the occurrence of a future event is completely inapposite. *Bartlett*, 2016 WL 1060200, at *8 dismissed a declaratory judgment claim that was "wholly subsumed by [a] claim for breach of fiduciary duty" that was dismissed. Likewise, the declaratory judgment claim at issue in *Bridges v. Blue Cross and Blue Shield Ass'n*, 935 F. Supp. 37, 40 (D. D.C. 1996) was duplicative of a breach of contract claim that arose under a Service Benefit Plan to provide health insurance to federal employees, and was also dismissed upon plaintiff's consent. Here, there is no duplicative additional claim.

## II.     GLENN'S DECLARATORY JUDGMENT CLAIM IS NOT TIME-BARRED

### A.     Perles Ignores Glenn's Arguments and Relies Upon Irrelevant Authority

Perles argues that Glenn's claim is time barred because it alleges Defendants repudiated their contractual obligations in 2010, and Glenn elected to bring suit in response to the same, thereby accelerating the accrual of any breach of contract claim. (Perles Memo. pp.4-5.)

4

In his opposition to the Fay's motion to dismiss [ECF No. 11] ("Fay Opp."), Glenn demonstrated that argument is wrong because:

(1) upon this Court's entry of a judgment in the *Peterson* plaintiffs' favor in 2007, Glenn's agreements became unilateral (Glenn had no further responsibilities under either), thereby rendering the anticipatory repudiation doctrine inapplicable, which in turn precludes acceleration of the accrual of any breach of contract claim;

(2) even if the agreements were somehow considered bilateral in 2010, and the anticipatory repudiation doctrine applied, no breach of contract claim accrued because Glenn's prior action sought to affirm his agreements, and did not seek damages; and

(3) Defendants in the prior action (and herein) lulled Glenn into inaction upon dismissal of the prior action by arguing Glenn's claim was subject to dismissal as premature until a distribution has been made to them for the benefit of the *Peterson* plaintiffs, resulting in the tolling any conceivably applicable limitations period.

In response, Perles asserts, in conclusory fashion, that (2) is wrong, and under *EastBanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996 (D.C. 2008), the statute of limitations for Glenn's claim began to run when he brought suit in New York. (Perles Memo. p.5.) That argument is incorrect. As noted in the Fay Opp., *EastBanc* supports Glenn's position.[1]

---

[1] *EastBanc* concerned whether the parties' entry into an agreement in 2001 triggered the running of the statute of limitations for breach of a 1998 letter agreement concerning EastBanc's contemplated acquisition of the Georgetown Park Mall. 940 A.2d at 996, 999-01. The Superior Court held EastBanc's entry into the 2001 agreement constituted an election to treat the other party as in breach, which in turn triggered the running of the statute of limitations. *Id*. at 1001, 1006-07. The Court of Appeals reversed on the grounds that entry into the 2001 agreement did not constitute "an election to treat the repudiation as a breach" because the 2001 agreement was entered into in furtherance of and to facilitate the contemplated Georgetown Park Mall transaction. *Id*. at 1008. The same logic supports not treating Glenn's prior action as an election to treat Fay's announcement that he had no intention of paying Glenn as a breach of the relevant agreements. While Glenn's earlier declaratory judgment action, on its face, reaffirmed the Associate Counsel and Additional Fee Agreements, at a minimum, the question of whether Glenn elected to treat such agreements as ended or sought to affirm the agreements presents a fact question which cannot be decided on a motion to dismiss. Significantly, *EastBanc*, the sole decision relied on by Defendants herein for the proposition that Glenn's claim is time barred, was decided on a motion for summary judgment, not a motion to dismiss, and therefore is irrelevant to that question.

Perles does not address (1) and (3), but instead attempts to analogize Glenn's situation to that of plaintiffs in other contract disputes whose claims were dismissed as time barred because they were asserted over three years after the breach, or discovery of the breach. (Perles Memo. pp.5-6 (citing *LoPiccolo v. Am. Univ.*, 840 F. Supp. 2d 71, 78 (D. D.C. 2012), *Medhin v. Hailu*, 26 A.3d 307, 308-09 (D.C. 2011), and *Pardue v. Ctr. City Consortium of Archdiocese of Wash., Inc.*, 875 A.2d 669, 870 (D.C. 2005)). In contrast to the foregoing decisions, no amount is presently due under Glenn's agreements as no distribution has been made from the QSF Trust, and the statute of limitations has not yet begun to run.

Perles also cites *Gauer v. Gallaudet Univ.*, 915 F. Supp. 2d 145, 148 (D. D.C. 2013) for the proposition that Glenn has a breach of contract claim that accrued when he was advised he would not be paid in 2010. (Perles Memo. p.5.) That decision is also inapposite, as in *Gauer*, unlike here, the contract at issue was bilateral, making the anticipatory repudiation doctrine available: plaintiff had an ongoing obligation to fulfill his obligations as assistant professor at the time of the alleged breach, and the university had an ongoing obligation to pay him for services rendered. In contrast, Glenn's contracts were unilateral from and after 2007, rendering the anticipatory repudiation doctrine <u>in</u>applicable, and in turn precluding acceleration of the accrual of any breach of contract claim.

Moreover, Glenn's decision to bring suit in 2010 should not be treated as having accelerated accrual of a breach of contract claim because at that time any recovery by the *Peterson* plaintiffs was too speculative to trigger acceleration, as the statutory authority permitting attachment had not yet been enacted and the appeals process was not complete until April 2016. The entire reason why commencement of a lawsuit in response to an anticipatory repudiation can sometimes accelerate breach of contract claim accrual is because such action permits the plaintiff

to achieve a recovery even absent a breach. That logic does not apply here. First, as noted by this Court, the odds of achieving a recovery when Glenn's prior action was commenced were extremely low. *See In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 37 (D. D.C. 2009) ("The truth is that the prospects for recovery upon judgments entered in these cases are extremely remote. The amount of Iranian assets currently known to exist in the United States is approximately 45 million dollars, which is infinitesimal in comparison to the 10 billion dollars in outstanding court judgments"). Second, as noted by the Supreme Court in *Bank Markazi v. Peterson*, 136 S. Ct. 1310 (2016), the *Peterson* plaintiffs' right to payment was based on Executive Order No. 13599, issued in February 2012, and the enactment of 22 U.S.C. § 8772 in August 2012, which paved the way for Judge Forrest's turnover order, entered in July 2013, which established a means by which to pay the *Peterson* plaintiffs and their counsel and which was subsequently affirmed by the Supreme Court.² Given that the likelihood of Glenn receiving payment at the time

---

² As noted by the Supreme Court:

> [T]he President, in February 2012, issued an Executive Order blocking "[a]ll property and interests in property of any Iranian financial institution, including the Central Bank of Iran, that are in the United States. Exec. Order No. 13599 …
>
> To place beyond dispute the availability of some of the Executive Order No. 13599-blocked assets for satisfaction of judgments rendered in terrorism cases, Congress passed … § 502 of the Iran Threat Reduction and Syria Human Rights Act of 2012 [as] 22 U.S.C. § 8772 [which] provides that, if a court makes specified findings, "a financial asset … shall be subject to execution … in order to satisfy any judgment to the extent of any compensatory damages awarded against Iran for damages for personal injury or death caused by' the acts of terrorism enacted in the FSIA's terrorism exception. § 8772(a)(1). Section 8772(b) defines as available for execution by holders of terrorism judgments against Iran "the financial assets that are identified in and the subject of proceedings in the United States District Court for the Southern District of New York in [*Peterson v. Islamic Republic of Iran*], Case

of the prior 2010 declaratory judgment action for services fully rendered by 2007 was virtually nil, it would make no sense to treat the commencement of such action as having accelerated the accrual date for a breach that would not occur until at least six years later.[3]

### B. Fay's Arguments, Incorporated by Reference, are Incorrect

Arguments asserted by Fay on reply [ECF No. 12] ("Fay Reply"), and incorporated into Perles' memorandum (Perles Memo. p.1.), likewise do not support the conclusion that Glenn's claim is time-barred.

First, Fay argues the rule that the anticipatory repudiation doctrine is inapplicable where the contract at issue is unilateral (argument (1) above), incorporated into RESTATEMENT (SECOND) OF CONTRACTS § 253(1), does not weigh against dismissal of Glenn's claim herein. Fay contends section 253(1) "deals only with availability of the remedy of damages for total breach, not whether a cause of action exists, and not whether other remedies … are available." (Fay Reply p.5.) This argument both ignores the rest of that section, the facts of this case, and applicable case law. Section 253(1) provides "[w]here an obligor repudiates a duty before has committed a breach and

---

No. 10 Civ. 45818 … that were restrained by restraining notices and levies secured by the plaintiffs in those proceedings.

*Bank Markazi*, 136 S. Ct. at 1318-19.

[3] Glenn supports the relief requested by his former Special Master Loraine Ray in the *Response of Special Masters Loraine Ray and Karen Kruger to Plaintiffs' Motion for Order Authorizing Payment of Funds for Compensation of Special Master of this Court*, filed September 2016 in the *Peterson* action [ECF No. 557], but does not believe Glenn's payments should be further diluted because of the negligence and misconduct of the Defendants herein (*i.e.*, failure to timely convert the *Peterson* action, which was brought under 28 U.S.C. §1606(A)(7) (later repealed), to a case under 28 U.S.C. § 1605A). Glenn and Special Master Ray were responsible for over 10% of the damages claims of the *Peterson* plaintiffs and that body of work resulted in over 10% of the total *Peterson* judgment. Glenn notes that the payment due to him has already been diluted by the authorized payments on account of 15 additional judgments as set forth in footnote 5 of the Supreme Court's decision in *Bank Markazi*.

<u>before has received all of the agreed exchange for it</u>, his repudiation alone gives rise to a claim for damages for total breach." (Emphasis added.) Damages for total breach are, in fact, unavailable under section 253(1) because the Defendants herein have received all of Glenn's performance. As a result, the anticipatory repudiation doctrine is necessarily unavailable, and thus no mechanism exists for accelerating accrual of a breach of contract claim. Absent such acceleration, no basis exists to argue Glenn's claim is time-bared. This argument also fails because under the law of this district, the anticipatory repudiation doctrine is inapplicable where the contracts at issue are unilateral irrespective of what the Restatement or the comments thereto provide. (Fay Opp. pp.2-4.)

  Second, Fay argues the rule that the anticipatory repudiation doctrine is inapplicable where the contract at issue is unilateral should be ignored because section 253, comment d provides "[a] court can often avoid harsh results [of section 253(1)] by making available other types of relief, such as a declaratory judgment," and Glenn sought just that relief. (Fay Reply pp.5-6.) However, the Restatement does not say the rule is inapplicable where the non-repudiating party seeks declaratory relief seeking to affirm the contract. Rather, the Restatement merely supports the position that where there is an actual, imminent threat of breach an aggrieved party need not sit helplessly by and wait for the breach. At no point does the comment state the availability of declaratory relief negates the applicability of section 253(1) (as interpreted by comment c), triggers accrual of a breach of contract cause of action, or otherwise renders the anticipatory repudiation doctrine applicable to situations involving unilateral contracts. If section 253(1) (or an analogous statement of the law) applies, no mechanism exists to accelerate accrual of a breach of contract claim. Moreover, it ill behooves Defendants herein to now argue that Glenn's claim accrued six

years ago when, at that time, the same parties argued that his claim was too speculative to survive dismissal.

Third, Fay argues that if the anticipatory repudiation doctrine is, indeed, inapplicable because Glenn's contracts are unilateral, then he has no claim now. (Fay Reply p.4.) That is not true: although he does not have a breach of contract claim (because it has not yet accrued), nothing prevents him from seeking a declaratory judgment. And the situation now, with payment imminent, is drastically different than at the time Glenn commenced his earlier declaratory judgment action.

Fourth, Fay argues that Glenn's alternative argument—that if the accrual date for any breach of contract claim were accelerated, the statute of limitations should be equitably tolled—should be rejected since the decisions Glenn relies on are "factually inapposite." (Fay Reply p.6.) However, if that is the case then the Complaint should definitely not be dismissed because fact questions such as this are not properly decided on a motion to dismiss.

### III. GLENN'S CLAIM SATISFIES APPLICABLE PLAUSIBILITY REQUIREMENTS

Perles argues, in the alternative, that Glenn's claim must be dismissed because he has not pled a plausible theory of liability under a breach of contract theory. Specifically, with respect to the Associate Counsel Agreement, Perles argues Glenn "fails to plead specifically the facts that would … establish the essential elements of breach of contract or damages." (Perles Memo. p.7.) With respect to the Additional Fee Agreement, Perles argues that Glenn has failed to adequately plead mutual assent. (Perles Memo. p.8.)

This argument is wrong. Glenn has no obligation to plead each element of a breach of contract claim because he is seeking only a declaratory judgment. Indeed, this case is premised on there being no present breach, meaning an essential element of a breach of contract claim cannot

be pled.  To the extent Glenn must plead liability under a breach of contract theory in the event of a future breach resulting from failure to pay Glenn upon Defendants' receipt of a distribution, Glenn has done so:

<u>Glenn pled the existence of both agreements</u>.  The Associate Counsel Agreement is attached to the Complaint.  With regard to the Additional Fee Agreement, Glenn has pled the existence of an oral agreement with Fay while he was a Fay & Perles partner, as well as facts supporting the existence of an oral and implied agreement.  (Complaint ¶¶16-21).  The level of detail provided satisfies plausibility requirements under *Twombly*.

<u>Glenn pled an obligation or duty by Perles arising out of both agreements</u>.  Glenn pled the amounts due under both agreements.  (Complaint ¶¶2, 13(c), 16, 28.)  Glenn further pled that Perles is responsible for those obligations once a distribution is made to Defendants on behalf of the *Peterson* plaintiffs.  Specifically, Glenn alleged that Fay and Perles formerly worked together in a partnership known as Fay & Perles; that Perles law Firm, P.C. is a successor to and is responsible for debts incurred by Fay & Perles; and that Perles, individually, is likewise responsible for partnership debts.  (*Id*. at ¶¶9-11.)[4]

<u>Damages in the event of a breach</u>.  Glenn pled he would suffer damages in the event a distribution is made to Defendants on behalf of the *Peterson* plaintiffs because no portion of such distribution would be remitted to him, as required by both agreements.  (Complaint ¶¶3, 29-30.)

---

[4] That individual partners are responsible for partnership debts is non-controversial. This district's Uniform Partnership Act and the revised act adopted by Maryland provide as much. *See* D.C. Code § 29-603.06(a) ("all partners shall be liable jointly and severally for all debts … of the partnership"); Md. Code, Corps. and Assocs. § 9A-306(a) (same).

## **CONCLUSION**

Perles' motion should be denied or, should this Court find any defect in the pleading, leave to amend should be granted.

| | |
|---|---|
| Dated: September 26, 2016 | STORCH AMINI & MUNVES PC |
| | By: /s/ Bijan Amini |
| | Bijan Amini |
| | 140 East 45th Street, 25th Floor |
| | New York, New York 10017 |
| | (212) 490-4100 |
| | |
| | *Attorneys for Plaintiff Jay Glenn* |

## **PROOF OF SERVICE**

    I hereby certify the foregoing Memorandum of Points and Authorities in Opposition to Perles Defendants' Motion to Dismiss was filed electronically via ECF on September 26, 2016 and served electronically at that time on counsel of record for all Defendants, all of whom are registered to receive filings via ECF.

                                                        /s/ Bijan Amini