## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAY GLENN,

      Plaintiff,

vs.

                          Civil No.: 1:16-cv-01452-RCL

THOMAS FORTUNE FAY, *et al.,*

      Defendants.

## REPLY OF STEVEN R. PERLES AND PERLES LAW FIRM, P.C.
## TO JAY GLENN'S OPPOSITION TO MOTION TO DISMISS

The Opposition filed by the Plaintiff, Jay Glenn ("Glenn"), to the Motion to Dismiss filed by Defendants Steven R. Perles and Perles Law Firm, P.C. (collectively, "Perles") only serves to make it clear that Glenn's claim is barred by the three-year statute of limitations. There is no question that, under well-settled District of Columbia law, the statute of limitations on Glenn's claim began to run when, as he alleges, he was notified by the Defendants in no uncertain terms in 2010 that they were not going to pay him. The D.C. Court of Appeals and this court, applying D.C. law, have clearly held that notice of a breach of contract is, in itself, an event that triggers the running of limitations.

This is especially applicable here, where Glenn repeatedly states in his Complaint that the Defendants "repudiated" their alleged agreement in 2010 when they notified him that he would not be paid. There can be no question that the statute of limitations began to run on Glenn's claim when he received that notice. Furthermore, Glenn made unequivocal statements to the U.S. District Court for the Southern District of New York in 2011 that are contrary to his current position and which demonstrate that his claim accrued no later than 2011. Accordingly, any claim by Glenn is now time-barred, Glenn is not entitled to declaratory relief under 28 U.S.C. § 2201,

and his claim for such relief must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## I.   ARGUMENT

### A.  The Statute Of Limitations Began To Run In 2010 When Glenn Was Notified That He Would Not Be Paid

Glenn's argument that the alleged breach of contract has not yet occurred because the Defendants themselves have not been paid ignores well-settled law in the District of Columbia stating that notice of a breach is, in itself, an event that starts the running of the statute of limitations; the limitations period does not wait until the date that performance is due to begin running.  Therefore, to the extent that a breach of contract occurred, it occurred in 2010, when Perles and Fay notified Glenn that he would not be paid due to his shoddy work and failure to perform.  It was at that point in 2010 that the statute of limitations began to run, and the limitations period has long since expired.

In *Medhin v. Hailu,* 26 A.3d 307 (D.C. 2011), cited in the Perles Motion, the defendant repeatedly told the broker that he was not going to pay the commission.  *Id.* at 309.  Three years after the initial refusal to pay, the disputed funds were placed in an escrow account, and four years after that, the plaintiff sued to recover the commission funds.  *Id.*  The court ruled that the action was time-barred by the statute of limitations because Medhin was well aware that he suffered an injury when he was told no commission would be paid.  *Id*. at 311.  Thus, "any claim by Medhin to recover that commission brought more than three years after that notice would be untimely." *Id.*  Similar to Glenn's arguments in the instant case, Medhin argued that the notice of refusal to pay did not constitute a breach, and that no breach occurred until the funds were disbursed.  *Id.*  The court rejected this argument, again stating that "Medhin was well aware of Hailu's decision not to

pay him a commission" and the unavailability of the funds did nothing to "affect the running of the statute of limitations." *Id.*

In *Gauer v. Gallaudet University,* 915 F. Supp. 2d 145 (D.D.C. 2013), this court addressed this very issue as it applied to an employment contract, and held that the statute of limitations for a breach of contract action began to run no later than the date the plaintiff received notice that the defendant was not going to perform under the contract. *Id.* at 147-148. The plaintiff in that case, like Glenn here, alleged that the notice from his employer was an anticipatory repudiation, *i.e.*, "an intention to breach the contract five months hence, at the start of the new academic school year…when [defendant's] performance under the employment contract came due." *Id.* at 147-48.

The plaintiff in that case contended that the statute of limitations did not begin to run until the first day of the new school year, but the *Gauer* court rejected that argument, holding that notice of a later breach was itself a breach of contract, thus triggering the statute of limitations. *Id.* at 148.  The court in *Gauer* cites to a string of cases in the District of Columbia which have reached the same conclusion  *Id.* (citing *Allison v. Howard University,* 209 F. Supp. 2d 55 (D.D.C. 2002) and *LoPiccolo v. American University*, 840 F. Supp. 2d 71 (D.D.C. 2012)).

In *Allison,* a student sued for breach of contract when he was expelled from law school. This court, applying D.C. law, ruled that the date from which the statute of limitations began to run was the date "the decision was made and communicated to the plaintiff."  209 F. Supp. 2d at 60.  Again, the date of notice was the date when the statute of limitations began to run, not the date that performance was due.

Similarly, in *LoPiccolo*, a student sued for breach of contract after the university notified him that his scholarship would not be renewed.   This court held that the date of notice to the plaintiff was the date from which the statute of limitations began to run ("The clock begins to run

when a party has been made aware that the other is refusing to perform . . . ."). 840 F. Supp. 2d at 78. In *LoPiccolo* this court once again ruled that the date of notice was the date from which the statute of limitations began to run, not the date upon which performance was due.

Glenn argues in his Opposition, for the first time, that the agreements upon which he relies are unilateral, thus rendering the anticipatory repudiation doctrine inapplicable and precluding acceleration of the accrual of any breach of contract claim. Pls.' Opp'n at 6. He further argues that Perles and Fay "lulled Glenn into inaction upon dismissal of the prior action by arguing Glenn's claim was subject to dismissal as premature until a distribution has been made to them for the benefit of the Peterson plaintiffs, resulting in the tolling any conceivably applicable limitations period." Pls.' Opp'n at 5. In response to Glenn's first argument regarding the purported unilateral nature of the agreements, Perles has made it abundantly clear that he is not relying on the anticipatory repudiation doctrine, but rather is claiming that, if any breach occurred, it occurred in 2010 upon notice to Glenn that he was not going to be paid.

With respect to Glenn's second point, no actions taken by the Defendants in 2011 reach the level necessary for equitable tolling of the statute of limitations. Glenn has not met the heavy burden to establish that "he has been pursuing his rights diligently, and that some extraordinary circumstances stood in his way." *Pace v DiGuglielmo,* 544 U.S. 408, 418 (2005). Perles further incorporates by reference the arguments made by Defendants, Thomas Fortune Fay and Fay Law Group, P.A., in Fay's Amended Motion to Dismiss, Reply, and related documents. Documents 8 and 12.

There is no question, based upon the well-settled law of the District of Columbia, that the statute of limitations on Glenn's claim began to run in 2010, when notice was given to Glenn that he would not be paid. Therefore, Glenn's claim is now time-barred.

**B.  Even If the 2010 Notice to Glenn Was Not a Breach Of Contract
But Rather An Anticipatory Repudiation, Glenn's Claim
Is Still Time-Barred By His Own Election To File A Lawsuit In 2011**

As outlined above, the notice provided to Glenn in 2010 constituted the purported breach and thus commenced the running of the statute of limitations.  And even if the court accepts Glenn's position that the notice in 2010 was not a breach of contract, but rather an anticipatory repudiation, the lawsuit filed by Glenn in 2011 would have commenced the running of the statute of limitations, and Glenn's suit remains time-barred.

As stated by the D.C. Court of Appeals in *Eastbanc*: "[a] so-called anticipatory breach 'only becomes a wrongful act if the promisee elects to treat it as such." *Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.,* 940 A.2d 996, 1007-07 (D.C. 2008) (quoting *Sheffield v. Paul T. Stone, Inc.,* 68 App. D.C. 378, 380 (D.C. Cir. 1938)).  Glenn unquestionably elected to treat the 2010 notice as an anticipatory repudiation of the contract, as manifested by the fact that he filed a lawsuit against Perles and Fay in the Southern District of New York based upon this very notice in 2011.  Glenn claims that, since the amount of his possible recovery was too speculative, the suit in New York would not accelerate the accrual of the statute of limitations.   Pls.' Opp'n at 9-10. Yet this argument is invalidated by the simple fact that Glenn could have sought a declaration in that case that he was entitled to a monetary recovery once the recovery in the *Peterson* case was known and the funds were distributed.  Instead, he chose to unsuccessfully sue for a declaratory judgment, and then waited five more years to attempt to do so again in this court, well after the statute of limitations had expired.

Furthermore, Glenn's reliance on *Eastbanc* to rebut the argument that his suit in 2011 began the running of the statute of limitations is misplaced.  In *Eastbanc*, while the court held that the signing of an Agreement was not an election to treat an earlier agreement as breached, the court

5

clearly stated that the filing of a lawsuit (as occurred in the case at hand) would be deemed such

an election. *Eastbanc,* 940 A.2d at 1008 ("One method of manifesting such an election is to file

an action for breach of contract.") (citing to 23 Samuel Williston & Richard A. Lord, *A Treatise*

*on the Law of Contracts*, § 63:55, at 666. (4th ed. 1993)).

Therefore, Glenn's filing of the lawsuit in 2011 would constitute acceptance of the

anticipatory repudiation and an election to treat the contract as breached, thus triggering the

running of the statute of limitations at that time and time-barring Glenn's instant lawsuit.

### C. Glenn's Claim for Declaratory Judgment Must Be Dismissed As There Is No "Case Of Actual Controversy" Because the Underlying Breach of Contract Claim Is Time-Barred

Glenn misstates Perles' argument regarding Glenn's claim for declaratory judgment and

ignores cited authority that a claim for declaratory judgment is not cognizable absent the existence

of a "judicially remediable right." *Mpras v. D.C.,* 74 F. Supp. 3d 265, 273 (D.D.C. 2014) (quoting

*C&E Servs., Inc. of Wash. v. D.C. Water and Sewer Auth.,* 310 F.3d 197, 201 (D.C. Cir. 2002)); Perles'

Mot. to Dismiss at 3. Glenn ignores the fact that the plain language of the Declaratory Judgment

Act precludes the instant action because of the requirement of a "case of actual controversy." Here,

none exists as the only underlying case or claim, the alleged breach of contract, is time barred.

Therefore, any declaration of "the rights and other legal relations of any interested party" is moot,

and Glenn's claim for declaratory judgment must be dismissed. *See Bartlett v. Overslaugh*, No.

12-1306 (ABJ), 2016 WL 1060200, at *8 (D.D.C. Mar. 11, 2016) (stating: "[a] court may dismiss

as moot a claim for declaratory relief where the claim duplicates or is wholly subsumed by another

claim that has been dismissed."). A claim under the Declaratory Judgment Act cannot stand alone

when the only cause of action asserted by the plaintiff is invalid *ab initio*. In other words, a

declaration stating the rights of the parties under a contract would be pointless and a waste of

6

resources if those rights cannot be enforced because any claim to do so is stale.  That is the case here.

### D.  Glenn's Arguments in the Southern District Of New York Belie His Current Position

As noted in the Perles Motion, Memorandum in Support of Motion to Dismiss, pp. 3, 5. Glenn filed an action in the Southern District of New York against Fay and Perles ("F&P") involving the same fee claim that is at issue in this case.  F&P moved to dismiss that action for various reasons.  Among other things, F&P argued that Glenn's entitlement to fees was contingent on the completion of the collection efforts in the *Peterson* case.  Glenn rejected that argument and, in so doing, made it clear that his claim for fees from F&P was ripe no later than 2011, when he pressed his claim.  Among other things, Glenn made the following statements in the Memorandum that he filed on June 24, 2011, in opposition to the defendants' motion to dismiss (the "SDNY Opposition") (a copy is attached hereto):

> The F&P Defendants argue that there is no Article III case or controversy -- and therefore no subject matter jurisdiction -- because Glenn's right to payment is "contingent" on the outcome of the pending efforts to collect the Peterson Liability Action judgment against Iran. *This argument has no merit. Courts routinely decide legal disputes where the actual financial consequences of such disputes are "contingent" upon other events, including the resolution of related disputes.*

SDNY Opposition, p. 1 (emphasis added).

> Moreover, Glenn is not asserting a charging lien against assets which come into the possession of the F&P Defendants - he has an interest in the proceeds of the collection actions in New York, as asserted in his complaint. Indeed, his written agreement provides that he is to receive "3% of the gross amount collected from the Defendants with respect to compensatory damages …" Cmpt., ¶ 25. *This is an interest in the entire fund being collected for the Peterson Plaintiffs.* This action is brought against the F&P Defendants because in their capacity as lead counsel for the Peterson Plaintiffs they will likely have ultimate responsibility for receiving and disbursing any funds collected on the Peterson Liability Action, *and they have already told Glenn that he would not be paid in full.*

SDNY Opposition, p. 3 (emphasis added).

Glenn's Complaint alleges that the F &P Defendants told him that he is not entitled to collect on his full attorneys' charging lien. *The declaratory judgment sought by Glenn will redress Glenn's injury and resolve all issues between the parties: there is nothing "hypothetical" about the issue before the Court*.

SDNY Opposition, p. 9 (emphasis added).

Having committed to these positions before the Southern District of New York in 2011, Glenn simply cannot be heard to argue now that he didn't mean it and that, contrary to his clear positions in his SDNY Opposition, he really was not entitled to relief in 2011.  The fact is that Glenn boldly and unequivocally told a United States District Court in 2011 that he was entitled to a judgment at that time for the same relief that he now seeks in this court, more than five years later.  Glenn's claim is stale, and his own protestation that he was entitled to relief for that claim in 2011 is compelling proof of that fact.

## II.    <u>CONCLUSION</u>

For the reasons set forth in Perles' Motion to Dismiss, this Reply, and the Motion to Dismiss and related documents filed by Thomas Fortune Fay and Fay Law Group, P.A. and

incorporated herein by reference, Glenn's Complaint must be dismissed, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Respectfully submitted,

BREGMAN, BERBERT, SCHWARTZ & GILDAY, LLC

By:   _____/s/ Douglas M. Bregman_____
　　　Douglas M. Bregman #218354


By:   _____/s/ Geoffrey T. Hervey_____
　　　Geoffrey T. Hervey #415907

　　　7315 Wisconsin Avenue
　　　Suite 800 West
　　　Bethesda, Maryland 20814
　　　(301) 656-2707 – telephone
　　　(301) 961-6525 – facsimile
　　　dbregman@bregmanlaw.com
　　　ghervey@bregmanlaw.com
　　　*Counsel for Defendant Perles*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that the foregoing Reply was filed electronically via the Court's ECF system on October 3, 2016 and were served electronically at that time on all counsel of record, all of whom are registered to receive filings via the Court's ECF system.

_____/s/ Geoffrey T. Hervey _____