## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAY GLENN,  )<br>          Plaintiff  )<br>                                  )<br>v.                                )<br>                                  )<br>THOMAS FORTUNE FAY, FAY LAW  )<br>GROUP, P.A., STEVEN R. PERLES, and  )<br>PERLES LAW FIRM, P.C.,  )<br>          Defendants  )<br>                                  ) | Civil Case No. 16-1452 (RCL) |

### MEMORANDUM OPINION

### I.   INTRODUCTION

This is an ancillary dispute between attorneys over who will reap the rewards of a sprawling litigation against the Islamic Republic of Iran (Iran) under the state sponsor of terrorism exception to the Foreign Sovereign Immunities Act (FSIA). Plaintiff Jay Glenn filed a declaratory suit against defendants Thomas Fortune Fay, Steven Perles, and their respective law practices. Defendants were the lead attorneys for plaintiffs in the action captioned *Peterson v. Islamic Republic of Iran*,[1] litigated before this Court. Glenn claims he was employed by defendants to assist in that litigation and seeks a declaratory judgment that he is entitled to payment. Before this Court are Fay's Motion to Dismiss [ECF No. 8] and Perles' Motion to Dismiss [ECF No. 13], pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, this Court will dismiss this action *sua sponte*.

---

[1] Case Nos. 01-cv-2094, 01-cv-268.

## II.   BACKGROUND

On October 23, 1983, suicide bombers from Hezbollah murdered 241 American servicemen and injured several more by bombing a United States Marine Corps barracks in Beirut, Lebanon. This Court previously presided over a consolidated action by nearly one thousand plaintiffs consisting of the victims, their families, and the representatives of their estates. On September 7, 2007, this Court found Iran liable for damages because it provided material support and assistance to Hezbollah. Iran did not appear here, and default judgment was entered in favor of the plaintiffs in the amount of more than $2 billion.

The *Peterson* plaintiffs were represented before this Court by the Fay Law Group, PA, Thomas Fortune Fay, the Perles Law Firm, PC, and Steven R. Perles (collectively, "Fay and Perles"). Fay and Perles engaged Jay Glenn to prove the amount of some of the *Peterson* plaintiffs' damages to a Special Master. Glenn asserts that, pursuant to a written agreement signed in 2003, Fay and Perles agreed to pay Glenn 3% of the gross amounts collected on judgments for plaintiffs represented before the Special Master, plus an amount equal to the necessary expenses incurred by Glenn. Compl. Ex. 1 [ECF 1-1]. Glenn alleges that Fay and Perles referred 63 plaintiffs to Glenn for representation before a Special Master. Compl. 3, ¶ 14. Importantly, Glenn's fee was "contingent upon collection and to the extent of collection only." Compl. Ex. 1 [ECF No. 1-1].

Glenn further asserts that Fay and Perles orally agreed to pay Glenn one-third of the one-third contingent fee received by Fay and Perles (11.11% of the total recovery), on top of the amount owed under the 2003 Written Agreement (3% of the gross recovery), if Glenn were to engage and refer other potential plaintiffs to Fay and Perles. Glenn claims to have engaged 40 additional plaintiffs pursuant to this Oral Agreement. Compl. 4, ¶ 17. He also claims the substance of the Oral Agreement was confirmed in the following writings to Fay and Perles:

- "First, following Glenn's entry into a Contingent Retainer Agreement with each additional plaintiff, Glenn transmitted an executed copy of the same to Fay, together with a cover letter confirming that the client was referred by Glenn." Compl. 4, ¶ 19.

- "Second, following Glenn's entry into each Contingent Retainer Agreement with the relatives of a Marine Barracks bombing victim, Glenn completed a Family Information Sheet . . . together with a letter which provided:

  > I located and executed Attorney Client Contracts for [names indicated on Family Information Sheet]. In accordance with prior discussions, I am entitled to an additional contingent fee of 11.11% of any recovery/interest for these [__] claims." Compl. 4-5, ¶ 20.

- "Third, following the Special Master's entry of a report and recommendation for each [plaintiff] Glenn represented, Glenn transmitted a copy of the same to Fay, together with a cover letter indicating the calculation of his fee under both the [Written Agreement] and [Oral Agreement], and Fay and Perles never objected." Compl. 5, ¶ 21.

This Court entered default judgment in favor of the *Peterson* plaintiffs. Glenn asserts that the 103 plaintiffs he represented pursuant to the Written and Oral Agreements were awarded over $309 million. Compl. 5, ¶ 22. However, Glenn claims that Fay and Perles repudiated the agreement in 2010, advising Glenn that he "would not be paid any amount under the [Written Agreement] or [Oral Agreement]." *Id.* Glenn filed for declaratory relief in the United Stated District Court for the Southern District of New York, *Glenn v. Fay*, Case No. 1:10-cv-08287. There, Glenn sought a declaratory judgment that (1) Glenn had a charging lien against Iranian assets in New York in an amount equal to that owed under the Written and Oral Agreements, (2) Glenn referred the 40 plaintiffs to Fay and Perles, (3) Glenn should be permitted access to sealed files in the *Peterson* case. Fay's Am. Mot. to Dismiss Ex. 2 [ECF No. 8-3]. That case was subsequently dismissed on jurisdictional grounds. *Id.* at Ex. 4 [ECF No. 8-5].

In 2013, the *Peterson* plaintiffs successfully brought an action to seize Iranian assets in the United States District Court for the Southern District of New York. That court ordered the turnover of $1.75 billion in assets held by Citibank N.A., cash bonds that Bank Markazi—the Central Bank of Iran—held in an account through an intermediary. The court's order created a qualified

3

settlement fund (QSF trust) and transferred the seized funds to a trustee—the Honorable Stanley Sporkin—for the benefit of the plaintiffs. The court's order was affirmed by both the Second Circuit[2] and the United States Supreme Court.[3]

In 2016, Glenn filed this action seeking a sole declaratory judgment that "upon Defendants' receipt of a distribution from the QSF Trust, Defendants must immediately remit to Glenn an amount to be determined at trial, plus interest and costs, as required by the Associate Counsel Agreement and the Additional Fee Agreement." Compl. 7, ¶ 30. Fay and Perles have moved that this action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Specifically, Fay and Perles argue that the case is barred by the District of Columbia's three-year statute of limitations on breach of contract actions, which was triggered by the 2010 S.D.N.Y. suit. In the alternative, Fay and Perles argue Glenn has failed to plead to necessary elements of a breach of contract claim. Fay's Am. Mot. to Dismiss [ECF No. 8]; Perles' Mot. to Dismiss [ECF No. 13]. Glenn counters that the statute of limitations would not begin to run until Fay and Perles actually receive payment and decline to pay Glenn. Mem. in Opp'n. to Fay's Mot. to Dismiss 4-5. Further, Glenn argues that he is not required to plead the elements of a breach of contract claim because the entire purpose of a declaratory action is to secure a declaration *before* a dispute ripens into a breach; "[t]hat purpose would be impossible to achieve if plaintiffs seeking a declaratory judgment concerning contractual obligations prior to breach were required to assert a breach of contract claim." Mem. in Opp'n to Perles' Mot. to Dismiss 3 [ECF No. 14].

---

[2] *Peterson v. Islamic Republic of Iran*, 758 F.3d 185 (2014).
[3] *Bank Markazi v. Peterson*, 136 S. Ct. 1310 (2016).

### III.   LEGAL STANDARDS

The Declaratory Judgment Act provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A declaratory action under § 2201 is not a separate cause of action, but rather a prayer for relief. In order to issue declaratory relief, a court must first determine that there is a "case or controversy" within the meaning of Article III of the United States Constitution and the Declaratory Judgment Act. This inquiry should focus on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270 273, 61 S. Ct. 510, 85 L.Ed. 826 (1941). Thus, declaratory relief requires a determination of 1) an actual, substantial controversy, 2) involving an interested party, 3) that warrants the immediate issuance of a declaratory judgment. *Id.*

Importantly, even when a suit satisfies the jurisdiction prerequisites, the Act gives courts discretion to determine "whether and when to entertain an action." *Wilton v. Seven Falls*, 515 U.S. 277, 282, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995). There is no absolute right to a declaratory judgment in federal courts, and the factors relevant to a court's determination of the propriety of declaratory relief are numerous. *See Hanes Corp. v. Millard*, 531 F.2d 585, 591 n.4 (D.C. Cir. 1976) (listing as among the factors whether it would finally settle the controversy between the parties, whether other remedies are available or other proceedings pending, the convenience of the parties, the equity of the conduct of the declaratory judgment plaintiff, prevention of procedural fencing, the state of the record, the degree of adverseness between the parties, and the public

importance of the question to be decided). Thus, a court may dismiss a declaratory action for equitable, prudential, or policy arguments. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136, 127 S. Ct. 764, 166 L. Ed. 2d. 604 (2007). In the D.C. Circuit, two criteria are ordinarily relied upon: 1) whether the judgment will serve a useful purpose in clarifying the legal relations at issue, or 2) whether the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. See *President v. Vance*, 627 F.2d 353, 364 n.76 (D.C. Cir. 1980) (quoting E. Borchard, Declaratory Judgments 299 (2d ed. 1941)).

Ultimately, the purpose of the Declaratory Judgment Act is to "allow[] the uncertain party to gain relief from the insecurity caused by a potential suit waiting in the wings." *Hipage Co., Inc. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 615 (4th Cir. 2008). "It relieves potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure—or never." *See* 10 C. Wright & A. Miller, Federal Practice and Procedure Civil § 2751 (4th ed.) (quoting *Japan Gas Lighter Ass'n v. Ronson Corp.*, 257 F. Supp. 219, 237 (D.N.J. 1966). "Where declaratory relief would cause a case to be tried piecemeal, or that only particular issues will be resolved without settling the entire controversy, a court should not exercise its discretion in favor of granting it." *Gibson v. Liberty Mut. Grp., Inc.*, 778 F. Supp. 2d 75, 78 (D.D.C. 2011).

## IV.   ANALYSIS

Here, Glenn seeks a declaration from this Court that "upon Defendants' receipt of a distribution from the QSF Trust, Defendants must immediately remit to Glenn an amount to be determined at trial, plus interest and costs, as required by the Associate Counsel Agreement and the Additional Fee Agreement." Compl. 7, ¶ 30. Fay and Perles seek to dismiss the suit pursuant to Rule 12(b)(6), arguing that no relief may be granted because 1) the underlying cause of action—breach of

contract—is barred by a D.C. statute of limitations, and 2) Glenn failed to plead the elements of breach of contract. However, for the reasons discussed below this Court declines to reach either those arguments or the merits of Glenn's claims. Instead, this Court exercises its discretion and declines jurisdiction over this declaratory complaint.

The Court is empowered to issue a declaratory judgment "[i]n a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). The party seeking relief must therefore show that there is a "substantial controversy, between interested parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941). A court is generally justified in entering a declaratory judgment under two circumstances: 1) if the judgment will serve a useful purpose in clarifying the legal relations at issue, or 2) if the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. See *President v. Vance*, 627 F.2d 353, 364 n.76 (D.C. Cir. 1980).

## A. The declaratory judgment sought here would serve no useful purpose by clarifying the legal relations between Glenn, Fay, and Perles.

Here, Glenn asks this Court to declare that defendants Fay and Perles must remit an amount to be determined at trial, as required by the Written and Oral Agreements. Compl. 7, ¶ 30. The Court fails to see how this judgment would serve a useful purpose. Perhaps the most useful purpose served by a declaratory judgment action is the clarification of legal duties for the future in order to avoid the accrual of damages or a full-fledged breach of contract litigation. Traditionally, plaintiffs bring a declaratory judgment to determine the legality of a course of action the plaintiff wishes to propose and thereby allow parties to conform their future conduct to avoid litigation. *See Swish Marketing, Inc. v. F.T.C.*, 669 F. Supp. 2d 72, 77 (D.D.C. 2009); *Nat'l R.R. Passenger Corp. v.*

*Cons. Rail Corp.*, 670 F. Supp. 424, 430 (D.D.C. 1987). But here, Fay and Perles appear to have repudiated any agreements with Glenn, and have refused to remit any monies obtained from the QSF Trust. Therefore, it seems clear that there is there is no guidance this Court can offer to steer Fay and Perles away from a purported breach of contract. Further, while a declaration here might clarify *some* issues—such as the existence or enforceability of the Written or Oral Agreements— it would ensure additional litigation between the parties to determine the damages, plus interest and costs, due under the Written and Oral Agreements. Finally, disbursement of funds from the QSF Trust appears imminent, and it is unlikely that this declaratory action—or the damages litigation sought therein—would be able to resolve the dispute before performance under the purported agreements becomes due. Thus, continuation of this action likely serves no useful purpose, as the contractual dispute is likely to ripen into the very type of claim the Declaratory Judgment Act seeks to avoid: breach of contract.

The Court fails to see how the declaration sought here would help avoid litigation. To the contrary, the declaration sought here would require it. The Court declines any invitation to mandate additional litigation before it becomes necessary.

### B. The declaratory judgment sought would not terminate the controversy uncertainty, insecurity, and controversy here.

Similarly, a declaratory action might be justified if it would terminate the controversy giving rise to the proceeding. Conversely, "it would not be prudent for [courts] to expend limited judicial resources to resolve issues which would not fully resolve the plaintiffs' claims." *Roth v. D.C. Courts*, 160 F. Supp. 2d 104, 110 (D.D.C. 2001). While a declaration here could conceivably terminate the controversy by finding for Fay and Perles, the Court cannot assume it will resolve the merits of the complaint in Fay and Perles' favor. If the Court rules that Glenn is entitled to

payment under one or both of the agreements alleged, this Court will still be required to litigate at least the issues of damages. Further, while Fay and Perles have not yet answered this complaint, their responses here make it clear that they dispute critical issues such as whether Glenn adequately performed under either of the agreements, whether Fay or Perles are even bound by the purported Oral Agreement, and whether Fay and Perles are equally obligated under the agreements.[4] Therefore, the Court finds that the declaration sought here would not terminate the dispute the controversy giving rise to this proceeding. Rather, it would result in the piecemeal resolution of disputes between Glenn, Fay, and Perles as they arise, resulting in substantial inefficiencies for both the parties and the federal judicial system.

"Where declaratory relief would cause a case to be tried piecemeal, or that only particular issues will be resolved without settling the entire controversy, a court should not exercise its discretion in favor of granting it." *Gibson v. Liberty Mut. Grp., Inc.*, 778 F. Supp. 2d 75, 78 (D.D.C. 2011). Because the relief sought here would result in the piecemeal litigation of disputes between these parties, and because the controversy here is likely to continue regardless of the declaration sought, this Court exercises its discretion in declining to hear this declaratory action.

## V.    **CONCLUSION**

In sum, this Court will exercise its discretion in declining to hear the declaratory action brought here because it would serve no useful purpose and would instead ensure the sort of piecemeal litigation the Declaratory Judgment Act seeks to prevent.  The Court makes no determination as

---

[4] In his memorandum, Perles claims that this dispute is "really a familial dispute [between Fay and his brother-in-law Glenn] to which Perles is not a party." Perles Mem. 8 n.3 [ECF No. 13-1]. Perles denies any knowledge of the Oral Agreement and denies any obligation arising from representations made to Glenn in "secret conversations" between Fay and Glenn.

to the arguments raised in Fay and Perles' motions to dismiss under Rule 12(b)(6) or the merits of Glenn's claims.

A separate order shall issue dismissing this action *sua sponte*.

Royce C. Lamberth
United States District Judge

DATE: 12/6/16